FILED
CLERK

10/28/2025

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
FLAGSTAR FINANCIAL & LEASING, LLC f/k/a
Signature Financial, LLC,

                                    *Plaintiff*,


                -against-



ANR LOGISTICS LLC, NAZAVIY PONOMARENKO,
and ANATOLIY PONOMARENKO,

                                    *Defendants*.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

REPORT AND
<u>RECOMMENDATION</u>
24-cv-08469 (JS) (JMW)

**A P P E A R A N C E S:**

Justin L. Rappaport
**Hinshaw & Culbertson LLP**
800 Third Avenue, Ste 13th Floor
New York, NY 10022
*Attorneys for Plaintiff*

        -and-

*No Appearance for Defendants*

**WICKS**, Magistrate Judge:

Plaintiff, Flagstar Financial & Leasing, LLC, formerly known as Signature Financial, LLC ("Plaintiff") commenced the instant action against Defendants ANR Logistics, LLC ("ANR Logistics"), Nazaviy Ponomarenko ("N. Ponomarenko"), and Anatoliy Ponomarenko ("A. Ponomarenko" and collectively, the "Defendants") to recover damages resulting from breach of contract and personal guaranties as well as to recover certain collateral. (*See generally*, ECF No. 1.) Before the Court on referral from the Hon. Joanna Seybert is Plaintiff's Motion for Default Judgment. (ECF No. 10.) For the reasons stated below, the undersigned respectfully recommends that Plaintiff's Motion (ECF No. 10) be **GRANTED**.

## BACKGROUND

### I.    *Factual Background*

The following allegations are drawn from the Complaint. (ECF No. 1.) Plaintiff is a New York limited liability company with its principal place of business at 100 Duffy Avenue, Suite 402, Hicksville, New York 11801. (*Id.* at ¶ 4.) Defendant ANR Logistics is a Washington limited liability company, with offices located at 2311 E. 1st Street, Vancouver, Washington 98661, and 5900 NE 88th Street, Building A, Suite 111, Vancouver, Washington 98661. (*Id.* at ¶ 5.) Defendant N. Ponomarenko is an individual residing at 10632 North East 66th Avenue, Vancouver, Washington 98686. (*Id.* at ¶ 6.) Defendant A. Ponomarenko is an individual residing at 7622 North East 60th Way, Vancouver, Washington 98686. (*Id.* at ¶ 7.) Defendants N. Ponomarenko and A. Ponomarenko are both owners, members, shareholders, officers, directors, and/or employees of Defendant ANR Logistics. (*Id.* at ¶ 8.)

On May 31, 2022, ANR Logistics, entered into the Master Security Agreement (the "Security Agreement") with Plaintiff, in which the parties agreed that Plaintiff would make loans and advances to ANR Logistics, evidenced by promissory notes, to be repaid with interest. (*Id.* at ¶ 9.) To ensure payment due under any promissory notes to Plaintiff from Defendant ANR Logistics, the Agreement contained a security interest in the form of collateral. (*Id.* at ¶ 10.) That same day, ANR Logistics executed and delivered to Plaintiff a promissory note evidencing that ANR Logistics borrowed from Plaintiff the principal sum of $322,032.00 ("the Loan") to be repaid with an annual interest of 7.7%. (*Id.* at ¶ 11.) The repayment schedule was for sixty consecutive monthly payments of $6,515,02, including principal and interest. (*Id.*) Pursuant to the Security Agreement, the specific items subject to Plaintiff's security interest were identified as two 2023 Volvo Truck Tractors, also known as the "Collateral". (*Id.* at ¶ 12.)

"Per the Delivery and Acceptance Certificate, executed by N. Ponomarenko on behalf of ANR Logistics," the Collateral was delivered and accepted by Defendant ANR Logistics on May 31, 2022. (*Id.* at ¶ 13.) Plaintiff properly perfected its security interest and to the Collateral by filing Certificates of Origin for a Vehicle with the State of Oregon and by filing financing statements with the Secretary of State of Washington on May 31, 2022. (*Id.* at ¶ 14.) On August 1, 2023, the repayment terms were modified so that Defendant ANR Logistics would be allowed to make three interest-only payments of $1,743.84 between August and October 2023, followed by forty-six consecutive monthly payments of $6,515.02, and a final single payment of $6,462.04 due by September 10, 2027. (*Id.* at ¶ 15.)

The Security Agreement provides several options to Plaintiff in the event of a default, including ceasing to advance money and declaring the entire unpaid indebtedness immediately due. (*Id.* at ¶ 19.) Within the Agreement, Defendants consented to this Court's jurisdiction with respect to any litigation commenced. (*Id.* at ¶ 20.) Defendant ANR Logistics defaulted with respect to its obligations under the Security Agreement and promissory note by failing to make monthly payments in June 2024 and thereafter. (*Id.* at ¶ 24.) As a result, the amount due under the promissory note was accelerated and thus, the debt was declared immediately due. (*Id.*) Defendants N. Ponomarenko and A. Ponomarenko executed personal guarantees on May 31, 2022, and thus, remain obligated to pay the sums due with respect to the promissory note. (*Id.* at ¶¶ 16-18.) When Plaintiff commenced this action, the sum due was $253,984.60. (*Id.* at ¶ 25.)

**II.**    ***Procedural History***

On December 11, 2024, Plaintiff filed the Complaint. (ECF No. 1.) On December 13, 2024, the Court directed Plaintiff to file a letter identifying the limited liability companies' members and their residency for both Plaintiff and Defendants to assist in determining whether

federal subject matter jurisdiction existed. (*See* Electronic Order dated 12/13/2024.) Plaintiff complied and the Court was satisfied that subject matter jurisdiction existed. (ECF No. 5; Electronic Order dated 12/21/2024.) The executed summons and affidavits of service thereto were filed. (ECF No. 6.) As a result of Defendants' failure to answer the Complaint or otherwise appear, Plaintiff requested a Certificate of Default, which was first denied but then entered into upon fixing the outlined deficiencies. (ECF No. 7-9.)

Subsequently, Plaintiff moved for default judgment. (ECF No. 10.) On October 9, 2025, the motion was referred to the undersigned for a Report and Recommendation. (Electronic Order dated 10/09/2025.) Upon a preliminary review, the Court directed Plaintiff to file supplemental documentations and comply with certain procedural requirements, which Plaintiff did. (*See* ECF Nos. 14-17; Electronic Order dated 10/11/2025.)

## THE LEGAL FRAMEWORK

There is a two-step process for the granting of default judgments under Fed. R. Civ. P. 55. First, as here, the Clerk of the Court enters default when a party fails to plead or otherwise defend the action. *See* Fed. R. Civ. P. 55(a); *see also* E.D.N.Y. Loc. Civ. R. 55.1(b) and 55.2. After the clerk's certificate of default is issued and posted on the docket, a party may apply or move for entry of a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Loc. Civ. R. 55.2. The decision to grant a motion for default is left to the sound discretion of the district court. *No Limit Auto Enterprises, Inc. v. No Limit Auto Body, Inc.*, No. 21-CV-4755 (AMD)(JMW), 2022 WL 18399477, at *2 (E.D.N.Y. Dec. 12, 2022), *report and recommendation adopted*, 2023 WL 348271 (E.D.N.Y. Jan. 19, 2023). As the Clerk has already entered default against Defendants (ECF No. 9), the Court is primarily concerned with Plaintiff's compliance with E.D.N.Y. Loc. Civ. R. 55.2.

4

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878 (RJD)(JMA), 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (finding that a default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true). "Where damages are susceptible to simple mathematical calculation and the plaintiff provides a 'sufficient basis from which to evaluate the fairness' of the requested damages, no evidentiary hearing is necessary." *Euro Pac. Capital Inc. v. Bohai Pharm. Grp., Inc.*, No. 15-CV-4410 (VM), 2018 WL 1596192, at *5 (S.D.N.Y. Mar. 28, 2018) (quoting *Am. Jewish Comm.*, 2016 WL 3365313, at *4).

However, a plaintiff must still demonstrate that the allegations set forth in the Complaint state valid claims. *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("[A] district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)) (alterations omitted). The Court, thus, must ensure: (i) Plaintiff satisfied all required procedural steps in moving for default judgment, *see* Loc. Civ. R. 55.2; and (ii) Plaintiff's allegations, when accepted as true, establish liability as a matter of law. *See Finkel*, 577 F.3d at 84; and (iii) Plaintiff's request for damages is adequately supported.

With this legal framework in mind, the undersigned analyzes the instant application.

## DISCUSSION

### I.    *Procedural Compliance*

Local Civil Rule 7.1 requires motions to include a notice of motion, a memorandum of law, and supporting affidavits or exhibits containing any necessary factual information for the decision of the motion.  E.D.N.Y. Loc. Civ. R. 7.1(a)(1) - (3).  Local Civil Rule 55.2 requires that a party moving for default judgment append to its application an affidavit or declaration demonstrating that (A) the Clerk has entered default against the Defendants, (B) the movant has complied with the SCRA, and (C) that the individual defaulting defendants are not minors or incompetent people, as well as all papers required by E.D.N.Y. Local Rule 7.1 (*supra*), and a proposed judgment and certificate of service that all documents in connection with the motion for default judgment have been personally served on or mailed to the defaulting defendants' residences or business addresses.  E.D.N.Y. Loc. Civ. R. 55.2(a)(1)-(3).  Recently added under the Local Rules is that the moving party "must file a statement of damages, sworn or affirmed to by one or more people with personal knowledge, in support of the request, showing the proposed damages and the basis for each element of damages, including interest, attorney's fees, and costs."  E.D.N.Y. Loc. Civ. R. 55.2(c).

With respect to the non-military affidavit, before a default judgment can be entered for the plaintiff, the SCRA commands that the Court "require the plaintiff to file with the court an affidavit . . . stating whether or not the defendant is in military service and showing necessary facts to support the affidavit." 50 U.S.C. § 3931; *see also Windward Bora, LLC v. Ortiz*, No. 21-CV-04154 (MKB) (JMW), 2022 WL 3648622, at *5 (E.D.N.Y. July 5, 2022), *report and recommendation adopted*, 2022 WL 3647586 (E.D.N.Y. Aug. 24, 2022). Because Defendant ANR Logistics is an entity and not an individual, this requirement is not at issue. *See Andy Ryan*

*Photographer, LLC v. City Vista, Inc*., No. 24-CV-3369 (JAM), 2025 WL 2778372, at *6 (E.D.N.Y. Sept. 30, 2025) (collecting cases) (noting that the SCRA's affidavit requirement does not apply to corporate defendants). However, for Defendants N. Ponomarenko and A. Ponomarenko, an SCRA is required.

Here, the motion fully complies with Local Rules 7.1 and 55.2(a)(2) because it includes (1) a notice of motion (ECF No. 10); (2) a memorandum of law (ECF No. 10-18); (3) affidavits and exhibits to support Plaintiff's contentions (*see* ECF Nos. 10, 14-17); and (4) a proposed order detailing the proposed judgment (ECF No. 10-10). The motion further complies with Local Rule 55, as Plaintiff properly attached and submitted a declaration affirming that the Certificate of Default was entered by the Court on April 16, 2025 (ECF Nos. 10-1, 10-7). Likewise, Plaintiff provided an affidavit and relevant documentation that Defendants are not in the military, infants, or incompetent. (ECF No. 14.) Plaintiff also filed a certificate of service certifying that the requisite documents were served on Defendants via first-class mail. (ECF No. 10-19.)

Finally, Local Rule 55.2(c) has been satisfied since Plaintiff filed a statement of damages demonstrating the proposed damages and basis for the element of damages. (ECF Nos. 16-17.) Plaintiff submitted the amount of damages owed totaling $88,451.69, with attorney's fees and costs in the amount of $11,593.75, and with accrued interest subsequent to May 19, 2025, at the default interest rate of 13.7% per annum.[1] (ECF No. 16 at ¶ 6.)

Accordingly, the undersigned finds that the Motion for Default Judgment is procedurally proper and now turns to the merits.

---

[1] This figure is less than the amount in the Complaint as Plaintiff represents in the supplemental certification of damages that the Collateral has been recovered and sold. (ECF No. 16 n.1.) Thus, the third cause of action in the Complaint is withdrawn and now moot. (*Id.*)

## II.    *Default Factors*

In evaluating whether to grant a default judgment, courts consider: (i) whether the defendant's default is willful; (ii) whether the defendant has a meritorious defense to plaintiff's claims; and (iii) the level of prejudice the non-defaulting party would suffer if the motion for default judgment is denied. *See Holiday Park Drive, LLC v. Newist Corp.*, No. 23-CV-2623 (AMD) (JMW), 2024 WL 4040351, at *4 (E.D.N.Y. Feb. 15, 2024).

Consideration of these three factors leads to a recommendation that an entry of default judgment is appropriate where, as here, Defendants have wholly failed to appear and present any defense, and Plaintiff is left with no further steps to take to secure relief. *ADI Glob. Distribution v. Green*, No. 20-CV-03869 (AMD) (JMW), 2023 WL 3355049 (E.D.N.Y. Apr. 24, 2023), *report and recommendation adopted*, No. 20-CV-03869 (AMD) (JMW), 2023 WL 3346499 (E.D.N.Y. May 10, 2023); *Fin. Servs. Vehicle Tr. by & through BMW Fin. Servs. NA, LLC v. Samaroo*, No. 24-CV-04512 (FB) (JMW), 2025 WL 1446908, at *4 (E.D.N.Y. Apr. 21, 2025), *report and recommendation adopted*, No. 24-CV-4512, 2025 WL 1446037 (E.D.N.Y. May 20, 2025) (same); *Empire State Carpenters Welfare v. Darken Architectural Wood*, No. 11-CV-46 (JS)(AKT), 2012 WL 194075, at *3 (E.D.N.Y. Jan. 17, 2012) *report and recommendation adopted*, 2012 WL 832452 (E.D.N.Y. Mar. 12, 2012) ("[T]he Court is unable to make a determination whether the Defendants have a meritorious defense since no such defense has been presented to the Court"); *Northwell Health, Inc. v. Northwell Staffing Agency, LLC*, No. 17-CV-1611 (DRH)(AKT), 2018 WL 1525803, at *9 (Mar. 1, 2018) *report and recommendation adopted*, 2018 WL 1525698 (E.D.N.Y. Mar. 28, 2018) (citations omitted) (noting that denying the motion for default judgment would be prejudicial to Plaintiff since "there are no additional steps available to secure relief in this Court")).

8

### III.    _Jurisdiction_

####    A.  _Personal Jurisdiction_

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." _Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp._, 619 F.3d 207, 213 (2d Cir. 2010). Since a judgment rendered against a defendant over whom the Court does not have personal jurisdiction can be vacated pursuant to Rule 60(b)(4), it "'preserves judicial economy for the court to assess personal jurisdiction from the outset and thereby avoid rendering a void judgment.'" _ADI Glob. Distribution_, 2023 WL 3355049, at *3 (citation omitted).

For a court to exercise personal jurisdiction: (i) a plaintiff must complete proper service of process, (ii) there must be a statutory basis for personal jurisdiction that renders such service of process effective, and (iii) the exercise of personal jurisdiction must comport with constitutional due process principles. _See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL_, 673. F.3d 50, 60–61 (2d Cir. 2012).

Importantly, service was procedurally proper here. Rule 4(c) requires that a summons must be served with a copy of the Complaint and by a person who is at least 18 years old and not a party to the case. _See_ Fed. R. Civ. P. 4(c). Additionally, Rule 4(e) permits service on individuals to be made (i) pursuant to the law of the state in which the district court is located, or (ii) delivering the summons and complaint to the individual personally, (iii) leaving a copy of the summons and complaint "at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there. …" Fed. R. Civ. P. 4(e). Defendant N. Ponomarenko was served with a copy of the Summons and Complaint on January 9, 2025, when a process server delivered it to the Defendant's spouse, Lianne Ponomarenko. (ECF No. 7-3.)

Likewise, A. Ponomarenko was served with a copy of the Summons and Complaint on January 9, 2025, when a process server delivered it to the Defendant's spouse, Alina Ponomarenko. (ECF No. 7-4.)

For the corporate Defendant, ANR Logistics, the standard is different. A limited liability company may be served by "delivering a copy personally to (i) any member of the limited liability company…if the management of the limited liability company is vested in its members, (ii) any manager…if the management of the [company] is vested in one or more managers, (iii) to any other agent authorized by appointment to receive process, or (iv) to any other person designated by the limited liability company to receive process, in the manner provided by law for service of a summons as if such person was a defendant." N.Y. C.P.L.R § 311-A(a); *see also* N.Y. Limit. Liab. Co. Law § 303 (permitting service of process by personal delivery to the secretary of state). Moreover, Fed. R. Civ. P. 4(h) states, an association may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(B); *see also Evangelista v. Late Stage Asset Mgmt.*, LLC, No. 24-CV-5292 (KAM)(MMH), 2025 WL 2717814, at *2 (E.D.N.Y. Sept. 24, 2025) ("Limited liability companies are treated as unincorporated associations under the Federal Rules and therefore are subject to service pursuant to Rule 4(h).") Here, the affidavit of service confirms that Defendant ANR Logistics was served with a copy of the Summons and Complaint on December 20, 2024, when a process server delivered it to an authorized agent of the Defendant, specifically Val Ponomarenko. (ECF No. 7-2.) Therefore, all Defendants were properly served.

Next, this action is predicated on diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a), as the action involves citizens of different states, and the amount in controversy exceeds $75,000.00. *See* 28 U.S.C. § 1332(a). "Personal jurisdiction in a diversity case is determined by the law of the state in which the district court sits." *SAS Grp., Inc. v. Worldwide Inventions, Inc.*, 245 F. Supp. 2d 543, 547 (S.D.N.Y. 2003) (citing *Kernan v. Kurz–Hastings, Inc.,* 175 F.3d 236, 240 (2d Cir. 1999)). Thus, the Court first looks to New York law for the purpose of determining personal jurisdiction over Defendants in New York.  Then, the Court evaluates whether the "exercise of jurisdiction under state law satisfies federal due process requirements of 'fair play and substantial justice.'" *Mortg. Funding Corp. v. Boyer Lake Pointe, LLC*, 379 F. Supp. 2d 282, 286 (E.D.N.Y. 2005) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Under New York law there are two routes for a court to exercise personal jurisdiction—general and specific. The undersigned considers each separately.

### 1. *General Jurisdiction*

"For general jurisdiction over an individual to comport with due process, Defendants must be domiciled in New York, served in New York, or have otherwise consented to the court's jurisdiction." *Reich v. Lopez*, 38 F. Supp. 3d 436, 455 (S.D.N.Y. 2014); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. UPS Supply Chain Sols., Inc.*, 74 F.4th 66, 76 (2d Cir. 2023), *cert. denied sub nom. UPS Supply Chain Sols., Inc. v. EVA Airways Corp.*, 144 S. Ct. 559 (2024) (quoting *D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103* (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements.")). Here, all three Defendants are not domiciled in New York, but rather, in Washington. (ECF No. 1.) Further, Defendants were all served in Washington, not in this state, as noted previously. (ECF Nos. 7-2, 7-3, 7-4.) However, Plaintiff does provide that Defendants have consented to this

Court's jurisdiction. (ECF No. 1 at ¶¶ 3, 20.)

Moreover, to satisfy the requirements of due process, the Defendant's activities in New York must constitute "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum States, thus invoking the benefits and the protection of its laws." *Burger King*, 471 U.S. at 475. This involves a two-fold inquiry: (1) "minimum contacts," and (2) "reasonableness." *Sea Tow Servs. Int'l, Inc v. Pontin.*, 472 F. Supp. 2d 349, 360 (E.D.N.Y. 2007). Here, since Defendants have consented to this jurisdiction, the minimum contacts and reasonable test is unnecessary. (ECF No. 10-12, ¶ 21.) Accordingly, the undersigned recommends a finding that the Court does have "general jurisdiction" over Defendants. *See Absolute Nevada, LLC v. Grand Majestic Riverboat Co., LLC*, 646 F. Supp. 3d 426, 438 (S.D.N.Y. 2022) (finding consent to personal jurisdiction by the signing of an agreement).

### 2. *Specific Jurisdiction*

On the other hand, specific jurisdiction is present when "a [s]tate exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Great W. Ins. Co. v. Graham*, No. 18-CV-6249 (VSB), 2020 WL 3415026, at *10 (S.D.N.Y. June 22, 2020) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). However, "[w]here general jurisdiction is asserted, the claim need not arise out of the defendant's contacts with the forum state…." *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 397 n.1 (S.D.N.Y. 2004).

Here, the parties consented to this Court's jurisdiction in their agreements as discussed above, and such negotiations do not "offend due process." *Fifth App, LLC v. Alpha Modus Ventures, LLC*, No. 22-CV-06607 (DG) (PK), 2024 WL 4145225, at *7 (E.D.N.Y. Aug. 29,

2024) (citations omitted). Therefore, having found general jurisdiction is present, a finding of specific jurisdiction is not required. *See id.* (internal citations omitted) ("[W]hen a defendant consents to personal jurisdiction in a forum selection clause, 'it is not necessary to analyze jurisdiction under an applicable long arm statute or federal constitutional requirements of due process.'")

## IV.   *Liability*

In cases of default, the court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor[.]" *Finkel*, 577 F.3d at 84. A defendant's default is considered an admission of all of the well-pleaded allegations of liability. *See Greyhound Exhibitgroup*, 973 F.2d at 158. Here, Plaintiff is alleging three claims: (i) breach of contract, (ii) breach of personal guaranties, and (iii) possession of Plaintiff's Collateral. (*See* ECF No. 1.)

To determine liability, the undersigned must first consider what law is to be applied. Generally, a "federal court sitting in New York must apply New York's choice of law rules when its jurisdiction is based on diversity." *ADI Glob. Distribution v. Green*, 2023 WL 3355049 at *5 (citing *Merch. Cash & Cap., LLC v. Haute Soc'y Fashion, Inc.*, No. 16-CV-2696 (ILG), 2017 WL 2912452, at *2 (E.D.N.Y. July 6, 2017) (quoting *Med. Research Assocs., P.C. v. Medcon Fin. Servs.*, 253 F. Supp. 2d 643, 647 (S.D.N.Y. 2003)). However, "where the parties have agreed to the application of the forum law—as evidenced by [the Security Agreement together with other supporting documents] … —their agreement ends the choice-of-law inquiry." *Barlow v. Gov't Emps. Ins. Co.*, No. 19-CV-3349 (PKC) (RML), 2020 WL 5802274, at *3 (E.D.N.Y. Sept. 29, 2020) (citing *Bennett v. Sterling Planet, Inc.*, 546 F. App'x 30, 33 (2d Cir. 2013). Notably, the Security Agreement between Plaintiff and Defendant ANR Logistics includes a

consent to jurisdiction provision, stating that all claims in relation to the Agreement would be dealt with pursuant to New York law. (ECF No. 10-12, ¶ 21.) This indicates that the parties intended for New York law to apply. Therefore, this analysis will proceed accordingly under New York law with regard to the breach of contract and breach of personal guaranties claims. As for the claim for possession of Plaintiff's Collateral, the Collateral has now been recovered and sold. (ECF No. 16 n.1.) The proceeds of the sale were credited to Defendants' balance. (*Id.*) Thus, this claim has been withdrawn and is now moot. (*Id.*)

### A.  *Cause of Action One: Breach of Contract*

Plaintiff asserts a breach of contract claim against ANR Logistics for its failure to make monthly payments from June 2024 to date in connection with the Security Agreement and Note. (ECF No. 1 at 6-7.)

To state a claim for breach of contract under New York law, a party must show "the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of its contractual obligations, and damages resulting from the breach." *Waldorf v. Waldorf*, 201 N.Y.S.3d 241, 242 (N.Y. App. Div. 2d Dep't 2023); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011) (explaining that "the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.")). "To establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound." *Kowalchuk v. Stroup*, 61 A.D.3d 118, 121, 873 N.Y.S.2d 43 (N.Y. App. Div. 1st Dep't 2009; *see also Lamda Sols. Corp. v. HSBC Bank USA, N.A.*, 574 F. Supp. 3d 205, 213 (S.D.N.Y. 2021) (quoting *Kowalchuk v. Stroup*, 61 A.D.3d at 121)

14

(same); *Express Indus. & Terminal Corp. v. New York State DOT*, 715 N.E.2d 1050, 1053 (N.Y. 1999) ("To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms.")

Here, the undersigned finds that Plaintiff has sufficiently established that Defendant ANR Logistics has failed to comply with its obligations to pay the debts owed and that Plaintiff otherwise met its contractual obligations, constituting a breach of contract. After the contract was formed and signed, Plaintiff performed their duty outlined in the Security Agreement by executing and delivering the loan of $322,032.00 to Defendant ANR Logistics. (ECF Nos. 10-2 at ¶ 11; 10-18 at 7.) Defendant ANR Logistics failed to perform its duty per both the Security Agreement and the Note when payments ceased in June of 2024 and any subsequent monthly payments, placing ANR Logistics in default. (ECF Nos. 10-2 at ¶ 27; 10-18 at 7.) Plaintiff has suffered damages in the sum of $253,984.60, now updated to $88,451.69, as evidenced by the non-payment of the Defendants. (ECF Nos. 1 at ¶ 31; 16 at ¶ 6.)

Therefore, the undersigned respectfully recommends that default judgment be entered as to ANR Logistics' liability for Cause of Action One—breach of contract.

### B. *Cause of Action Two: Breach of Personal Guaranties*

Plaintiff asserts a breach of guarantees claim against N. Ponomarenko and A. Ponomarenko for joint and several liability for their failure to pay the debt owed by ANR Logistics as an obligation that was agreed upon in their respective guarantees. (ECF No. 1 at 7-8.)

Under New York law, Plaintiff must show "an absolute and unconditional guaranty, the underlying debt, and the guarantor's failure to perform under the guarantee." *ADI Glob. Distribution*, 2023 WL 3355049 at *5 (citing *HSH Nordbank AG N.Y. Branch v. Swerdlow*, 672 F.

Supp. 2d 409, 417 (S.D.N.Y. 2009) (quoting *Kensington House Co. v. Oram*, 739 N.Y.S.2d 572, 572 (N.Y. App. Div. 2002)). Furthermore, if the "signed guaranty is unambiguous, there is no barrier to personal liability for a corporate debt." *ADI Glob. Distribution v. Green*, 2023 WL 3355049 at *5 (citing *Citibank, N.A. v. Uri Schwartz & Sons Diamonds, Ltd.*, 948 N.Y.S.2d 275, 279-79 (N.Y. App. Div. 2012)).

Taking the facts in the Complaint as true, and having reviewed the Continuing Guaranty Agreements, the undersigned finds that Plaintiff has sufficiently alleged facts that demonstrate a breach of personal guaranties. In the Agreements, both Defendants N. Ponomarenko and A. Ponomarenko "absolutely and unconditionally guarantee[d] the full and prompt payment when due of all present and future obligations of Debtor to Creditor...." (ECF Nos. 10-16 at ¶ 2; 10-17 at ¶ 2.) Defendants N. Ponomarenko and A. Ponomarenko have failed to satisfy the debts owed to Plaintiff and are in default. (ECF No. 1 ¶¶ 24-25.) *See Citibank, N.A.*, 948 N.Y.S.2d (finding liability under an absolute and unconditional guaranty where the signer guaranteed repayment of any debts and failed to do so); *see also LG Funding, LLC v. Fla. Tilt. Inc.*, No. 15-CV-631 (PKC) (VMS), 2015 WL 4390453 (E.D.N.Y. July 15, 2015) (finding default judgment for breach of guaranty where a guaranty was signed to be liable for all debts and the debt owed was not paid).

Therefore, the undersigned respectfully recommends that default judgment be entered as to Defendants N. Ponomarenko and A. Ponomarenko for joint and several liability for breach of personal guaranties.

## V.    *Damages*

Once liability for default is established, the next inquiry is damages. A party's default constitutes a concession of all well pleaded allegations, however, such default "is not considered

an admission of damages." *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012)). Here, Plaintiff requests the following: (i) judgment be entered in the amount of $88,451.69, (ii) pre-judgment interest at a contractual rate of 13.7%, and attorneys' fees and costs in the amount of $11,593.75. (ECF No. 16.) Each is addressed below.

### A. *Judgment Amount*

While "the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101 (JFB) (GRB), 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (quotations omitted), *report and recommendation adopted*, 2012 WL 1354481 (E.D.N.Y. Apr. 13, 2012). Under Rule 55(b)(2), "it [is] not necessary for the District Court to hold a hearing" to determine the amount, "as long as it ensured that there was a basis for the damages specified in the default judgment." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *see also Sec'y of U.S. Dep't of Hous. & Urb. Dev. v. Gilbert*, No. 20-CV-1441, 2022 WL 344270, at *3 (N.D.N.Y. Feb. 4, 2022) ("A hearing is not necessary where the record contains detailed affidavits and documentary evidence that enables the court to evaluate the proposed sum and determine an award of damages."). Thus, a "court may determine there is sufficient evidence … upon a review of detailed affidavits and documentary evidence." *Trico Tarek Factory v. Jetax Inc.*, No. 24-CV-2409 (ST), 2025 WL 2625376, at *11 (E.D.N.Y. Sept. 11, 2025), *report and recommendation adopted*, No. 24-CV-03731 (JMA) (ST), 2025 WL 2782485 (E.D.N.Y. Sept. 30, 2025) (citations omitted).

Here, Plaintiff seeks an Order awarding judgment in the amount of $88,451.69 for the remaining balance of the debt owed. This sum represents the original total of non-payment

resulting from defaulting Defendants' obligations on the Note, and thereby the guaranties minus the sums received from seizing and selling the Collateral. (ECF No. 16 at 2.)  Plaintiff supports this amount by attaching a payoff statement prepared by David McGowan ("McGowan") the Vice President and National Group Director of Portfolio Manager for Plaintiff, who has "personal access to and direct custody and control over records … [and] personally reviewed the records with respect to the loans." (ECF Nos. 17, 17-1.) The Declarations of McGowan further outlines the debt owed. (ECF Nos. 16-17.) However, Plaintiff asserts that it is entitled to late fees equaling $3,909.00 which is included in the total amount. (ECF Nos. 10-11 at ¶ 13; 16 at 2.) This is incorrect. Where prejudgment interest is awarded, late fees are prohibited. *See ADI Glob. Distribution*, 2023 WL 3355049, at *6 (collecting cases that deny late fees as duplicative of the pre-judgment interest award). Thus, the Court recommends awarding judgment in the amount of $84,542.69.

### B. Pre-Judgment Interest

"In awarding interest, a court may look to state law to determine an appropriate rate." *Lanzafame v. Dana Restoration, Inc.*, No. 09-CV-0873 (ENV) (JO), 2011 WL 1100111 at *4 (E.D.N.Y. Mar. 22, 2011) (citing *Lodges 743 & 1746, Int'l Ass'n of Machinists & Aerospace Workers v. United Aircraft Corp.,* 534 F.2d 422, 446 (2d Cir. 1975)). Under New York Law, Plaintiff is entitled to pre-judgment interest on the damages from the time of the breach, at a rate of 9% per annum.  *See* N.Y. C.P.L.R. §§ 5001, 5004.

Pre-judgment interest must be computed from either (1) the date of breach or, if multiple occasions of breach make impossible the determination of a single date, (2) a reasonable intermediate date decided by the Court.  *See* N.Y. C.P.L.R. § 5001 ("Interest shall be computed from the earliest ascertainable date the cause of action existed . . . . Where such damages were

incurred at various times, interest shall be computed upon each item . . . or upon all of the damages from a single reasonable intermediate date."). "[C]ourts have 'wide discretion in determining a reasonable date from which to award pre-judgment interest.'" *Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011) (quoting *Conway v. Icahn & Co*., 16 F.3d 504, 512 (2d Cir. 1994)).

"However, where there is a clear, unambiguous, and unequivocal expression to pay an interest rate higher than the statutory interest rate until the judgment is satisfied, the contractual interest rate is the proper rate to be applied." *Ret. Accts., Inc. v. Pacst Realty, LLC*, 49 A.D.3d 846, 846–47, 854 N.Y.S.2d 487, 488–89 (N.Y. App. Div. 2d Dep't 2008) (collecting cases) (concluding that the lower court correctly awarded a 24% interest rate as the note expressly provided for such a rate); *see also E. Sav. Bank, FSB v. McLaughlin*, No. 13-CV-1108 (NGG) (LB), 2014 WL 2440582, at *2 (E.D.N.Y. May 30, 2014) (quoting *Ret. Accts., Inc.*, 854 N.Y.S.2d at 489) ("New York courts considering this issue have routinely rejected defendant's argument, holding that 'where there is a clear, unambiguous, and unequivocal expression to pay an interest rate higher than the statutory interest rate until the judgment is satisfied, the contractual interest rate is the proper rate to be applied.'"); *Wizara, LLC v. Smartlink Commc'n, SpA*, No. 17-CV-424(LEK)(TWD), 2024 WL 964227, at *5 (N.D.N.Y. Mar. 6, 2024) (same).

Plaintiff is entitled to prejudgment interest as a result of Defendants' failure to abide by the terms of the Note and subsequently, the personal guarantees. Yet, the prejudgment interest rate agreed to in the Note is higher—13.7%. (*See* ECF No. 10-13.) This percentage represents the original 7.7% interest on the Loan (ECF No. 10-13 at § 2) and the additional rate of 6% as a result of default (ECF No. 10-13 at § 8.) This was agreed upon by the parties, evidenced by the signing of Defendant ANR Logistics. (*See* ECF No. 10-13.) Therefore, the 13.7% interest rate is

appropriate here. *See Mercer as Tr. of Robert L. Mercer Revocable Tr. v. Erin Stewart LLC*, No. 23-CV-10588 (KPF), 2024 WL 4648017, at *3 (S.D.N.Y. Oct. 31, 2024) (internal citations omitted) ("The common practice among courts within the Second Circuit is to grant interest at a rate of nine percent, the rate of pre-judgment interest under New York State law … [unless] there is 'a clear, unambiguous, and unequivocal expression to pay an interest rate higher than the statutory rate until the judgment is satisfied,' courts will apply the rate agreed upon by the parties."); *see also Golden Bridge LLC v. Queensway Builders LLC*, No. 22-CV-3551(AMD)(TAM), 2023 WL 5533352, at *10–11 (E.D.N.Y. Aug. 10, 2023), *report and recommendation adopted*, No. 22-CV-3551(AMD)(TAM), 2023 WL 5533494 (E.D.N.Y. Aug. 28, 2023) (awarding a 24% rate).

Therefore, the undersigned respectfully recommends that Plaintiff's request for pre-judgment interest be granted at the agreed upon rate of 13.7% per annum, starting from May 20, 2025[2] (the date following the instant motion filing) until the date the judgment is entered.

## C. Attorneys' Fees and Costs

Here, Plaintiff seeks attorneys' fees and costs in the amount of $11,593.75 ($9,971.50 for fees and $1,622.25 for costs). (*See* ECF No. 15.) Plaintiff asserts that it is entitled to such fees because pursuant to "Section '27' of the Security Agreement, '[Defendants] shall pay all of [Flagstar's] expenses, attorney's fees, court costs and disbursements (collectively, the "Expenses") arising out of, or related to, the protection, preservation and/or enforcement of [Flagstar's] rights under [the Security Agreement], each Note and/or the other Loan Documents…'" (ECF No. 10-11 at ¶ 15 (citing ECF No. 10-12 at § 27).) As the parties also

---

[2] Plaintiff has included the pre-judgment interest amount from July 21, 2024, through May 19, 2025, in the judgment award request. (*See* ECF No. 16 at 2.)

agreed to this upon the signing of the Security Agreement, Plaintiff is entitled to such fees and costs. However, the inquiry does not stop there. As discussed below, the Court must deem such fees and costs reasonable. *See ADI Glob. Distribution*, 2023 WL 3355049, at *7 (finding Plaintiff was entitled to fees because the defendant agreed to pay such fees under their agreement).

To determine the reasonableness of an attorneys' fee award, "courts in the Second Circuit multiply the reasonable hourly rate by the number of hours reasonably expended by counsel," commonly referred to as the lodestar approach. *Ritchie v. Gano*, 756 F. Supp. 2d 581, 583 (S.D.N.Y. 2010) (referencing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany County Board of Elections*, 522 F.3d 182, 183–84 (2d Cir. 2008)). "A party seeking an award of attorney's fees bears the burden to document 'the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflected, for each attorney and legal assistant, the date, the hours expended, and the nature of the work done.'" *Bds. Trs. Ins., Annuity, Scholarship, & Apprenticeship Training Funds Sheetmetal Workers' Int'l Ass'n, Loc. Union No. 137 v. Liberty Signs, Inc.*, No. 10-cv-1737 (ADS) (AKT), 2011 WL 4374519, at *6 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted*, 2011 WL 4373893 (E.D.N.Y. Sept. 19, 2011).

Here, Plaintiff submits a declaration from its attorney, Justin L. Rappaport ("Rappaport"), billing invoices, which outline the tasks completed as well as hours spent and the respective rates. (*See* ECF Nos. 15, 15-1.)

Rappaport avers that (i) from December 9, 2024, through February 28, 2025, his firm worked on the initial preparation and commencement of this action, including drafting and filing the pleadings, coordinate service and establishing jurisdiction. (ECF No. 15 at ¶ 4.)  From March

21

4, 2025, through April 18, 2025, his firm worked on matters concerning post-service procedures, preparing for the certificate of default, and any other directives from the Court. (*Id.* at ¶ 5.) Lastly, his firm worked on the tasks that dealt with the instant motion from April 23, 2025, through May 19, 2025. (*Id.* at ¶ 6.) As demonstrated in the itemized invoice, his firm billed 25.90 hours.[3] (*See* ECF No. 15-1.) These hours were split amongst Rappaport, a partner at the firm who has been practicing in New York since 2007 with extensive experience in this practice area, who billed this matter at a discounted rate of $385.00 per hour, and Laura Montoya ("Montoya"), an associate at the firm who was recently admitted in 2024, helps Rappaport on complex litigation matters, and  bills at an hourly rate of $385.00. (ECF No. 15 at ¶¶ 7-9.) However, Rappaport does not include any information on attorney Mariam Chubinidzhe, who appears to have billed .20 hours on this matter. The Court recognizes that this amount is minimal. Yet, without further information as directed by this Court (see Electronic Order dated 10/11/2025), the Court will not award the .20 hours billed by Mariam Chubinidzhe.

Hourly rates in the Eastern District of New York, appear to "generally range from $300.00 to $450.00 for partner-level attorneys, and $200.00 to $325.00 for those with less experience." *Perrone v. Amato*, No. 09-CV-316 (SIL), 2022 WL 595187, at *3 (E.D.N.Y. Feb. 27, 2022); *see also Abularach v. High Wing Aviation LLC*, No. 22-CV-1266 (MKB), 2025 WL 405986, at *7 (E.D.N.Y. Feb. 5, 2025) (awarding an hourly rate of $450 for an experienced commercial litigator partner and noting "the reasonable hourly rate range for partners in the Eastern District from $300 to $450 to $450 to $650"); *Linde v. Arab Bank, PLC*, No. 04-CV-2799 (BMC) (PK), 2023 WL 9232942, at *6 (E.D.N.Y. Nov. 28, 2023), *report and*

---

[3] Rappaport states that his firm billed 14.40 hours in the declaration at a rate of $385, which amounts to the total fees requested. (ECF No. 15 at ¶ 7.) However, a review of the invoices shows 25.90 hours were billed at that rate, which equals to the fees amount requested. Thus, the Court accepts this clerical error.

*recommendation adopted*, No. 04-CV-2799 (BMC)(PK), 2024 WL 3873708 (E.D.N.Y. Aug. 19, 2024) ("prevailing rates for attorneys in the E.D.N.Y. are approximately $300 to $450 per hour for partners, $200 to $300 per hour for senior associates, and $100 to $200 per hour for junior associates"). However, courts within this District have recently begun to recognize an increase attorneys' fees hourly rates. *See Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 243-44 (E.D.N.Y. 2025) ("I have rounded out the forum rates in the Eastern District to now be $450-$650 for partners, $300-$450 for senior associates, $150-$300 for junior associates, and $100-$150 for paralegals.")

Given the above, Rappaport's discounted rate of $385.00 is well within reason. However, to award Montoya, a newly admitted attorney with the same rate as Rappaport, would require the Court to close its eyes to the well-settled forum rates. *See id.* Therefore, the Court finds it appropriate to reduce Montoya's rate to $250—a rate that is higher than the usual due to inflation. *See Prime Contractors Inc. v. APS Contractors Inc.*, 786 F. Supp. 3d 524, 552 (E.D.N.Y. 2025) (reducing associate hourly rates); *Nat'l Env't Saety Co., Inc. v. Katz*, No. 18-CV-02161(JMA)(GRB), 2019 WL 1994049, at *2 (E.D.N.Y. May 6, 2019) (reducing hourly rates on a breach of promissory note action). The updated recommended award of attorney's fees is below:

| Attorney | Hours Requested | Hours Awarded | Rate Requested | Rate Awarded | Hours Awarded X Rate Awarded |
|---|---|---|---|---|---|
| Justin L. Rappaport | 9.1 | 9.1 | $385.00 | $385.00 | $3,503.50 |
| Laura Montoya | 16.6 | 16.6 | $385.00 | $250.00 | $6,391.00 |
| Mariam Chubinidzhe | .2 | 0 | $385.00 | 0 | $0.00 |
| **TOTALS** | 25.90 | 25.70 | -- | -- | **$9,894.50** |

Accordingly, considering these attorneys' hourly billing rate in light of their experience and skill, the nature of the case, and the services rendered, the undersigned recommends awarding Plaintiff attorneys' fees and costs in the amount of $9,894.50.

Plaintiff likewise seeks litigation costs in this action, including this Court's filing fee of $405, costs paid for service of process, which is $1,209.00, and costs for postage and notary services in the amount of $8.25, for a total of $1,622.25 in costs. (ECF No. 15 at 3.) Pursuant to the parties' Security Agreement, Defendants agreed to pay for costs and as such, Plaintiff is now entitled to such costs. (*See* ECF No. 10-11 at ¶ 15 (citing ECF No. 10-12 at § 27).) In addition, pursuant to Fed. R. Civ. P. 54(d)(1), a prevailing party is entitled to recover certain taxable costs – including filing fees and reasonable service of process fees. *See Prime Contractors Inc.* 786 F. Supp. 3d at 554 ("Federal courts sitting in diversity jurisdiction look to Federal Rule of Civil Procedure 54(d)(1) to calculate costs, which provides that '[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party.'") Plaintiff "bear [] the burden of adequately documenting and itemizing the costs requested." *Datiz v. Int'l Recovery Assocs., Inc.*, No. 15-CV-3549, 2020 WL 5899881, at *14 (E.D.N.Y. Mar. 12, 2020)).

"Filing fees are recoverable without supporting documentation if verified by the docket." *Arch Specialty Ins. Co. v. Apco Indus., Inc.*, No. 18-CV-4041 (ENV)(SJB), 2020 WL 6581000, at *7 (E.D.N.Y. Oct. 5, 2020); *Philpot v. Music Times LLC*, No. 16CV1277 (DLC) (DF), 2017 WL 9538900, at *7 (S.D.N.Y. Mar. 29, 2017), *report and recommendation adopted*, No. 16CV1277 (DLC), 2017 WL 1906902 (S.D.N.Y. May 9, 2017) (a filing fee is "a fact of which

the Court can take judicial notice"). Here, the docket indicates the $405 filing fee was paid. (ECF No. 1). Therefore, the filing fee should be awarded.

With respect to process server fees, they are "also recoverable, but they must be supported by documentation." *Arch Specialty Ins. Co*., 2020 WL 6581000, at *7. Here, Plaintiff provided an invoice for a process server fees of $1,209.00 (ECF No. 15-2 at 3) and indicated that those fees were paid (ECF No. 15 at ¶ 11), which is sufficient for Plaintiff to recover such fees. *See Arch Specialty Ins. Co*., 2020 WL 6581000, at *7.  Lastly, Plaintiff seeks $8.25 for postage and notary services but does not have separate receipts for such fees as "those costs were nominal incidental expenses reflected directly in the contemporaneous Bronster invoices." (ECF No. 15 at 3.) A review of the billing invoices shows a charge for the postage and notary services. The Court is satisfied with such. (*See* ECF No. 15-1 at 5.) Therefore, the Court respectfully recommends an award of $1,622.25 in costs.

## **CONCLUSION**

Accordingly, for the reasons set forth above, the Court respectfully recommends that Plaintiff's Motion for Default Judgment (ECF No. 10) be **GRANTED** as follows:

(i)    Defaulting Defendant ANR Logistics to be found liable on Cause of Action One;

(ii)    Defaulting Defendants A. Ponomarenko and N. Ponomarenko to be found liable on Cause of Action Two;

(iii)    Deeming Cause of Action Three withdrawn and now *moot*;

(iv)    Entering an Order awarding judgment against ANR Logistics in the amount of $84,542.69 for Cause of Action One

(v)    Entering an Order awarding judgment against A. Ponomarenko and N.

25

Ponomarenko, jointly and severally, for Cause of Action Two;

(vi)    Awarding pre-judgment interest at a contractual rate of 13.7% from the date of May 20, 2025, through the date judgment is entered; and

(vii)    Awarding attorneys' fees and costs in the amount of $11,516.75.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel through ECF. Counsel for Plaintiff is directed to serve copies of this Report and Recommendation upon the defaulting Defendants and file proof of service on ECF **within two business days**. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action before the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:  Central Islip, New York
          October 28, 2025

RESPECTFULLY RECOMMENDED,

/S/ *James M. Wicks*
          JAMES M. WICKS
United States Magistrate Judge